**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case Nos.   12-20085-CM (Criminal) |
| v. | ) 14-2174-CM (Civil) |
| | ) |
| JESUS RIOS-ZAMORA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Jesus Rios-Zamora's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 29). Defendant in this case pleaded guilty to unlawfully re-entering the United States following deportation after an aggravated felony in violation of 8 U.S.C. § 1326(a). At defendant's sentencing, the court applied a sixteen-level enhancement because defendant's prior aggravated felony was a crime of violence. Defendant argues that the prior felony upon which the court relied in enhancing his sentence did not qualify as a crime of violence and that, therefore, his counsel provided ineffective assistance.[1] For the reasons stated below, the court denies the motion.

I.     **Timeliness**

The government first contends that defendant's motion is untimely. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a § 2255 motion must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1); *see Johnson v. United States*, 544 U.S. 295, 299 (2005). A judgment becomes final on the date the Supreme Court

---

[1] The court is mindful of defendant's pro se status and liberally construes his pleadings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("Finally, because Pinson appears pro se, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

affirms a conviction, denies a petition for writ of certiorari, or when the time for filing a petition for writ of certiorari expires.  *Clay v. United States*, 537 U.S. 522, 524–25 (2003).

In this case, defendant initially appealed his conviction, but then he moved to dismiss his appeal.  The government contends that defendant's § 2255 motion should be denied because it was filed more than one year after the Tenth Circuit issued its mandate dismissing defendant's appeal.  Without citation to any authority, the government argues that, because defendant dismissed the appeal on his own motion, "it is illogical to assume defendant's conviction was not 'final' until some later date."  (Doc. 31 at 3.)

While the Tenth Circuit has not spoken to the specific issue of when a conviction becomes final after a defendant voluntarily dismisses an appeal, the court finds persuasive the Seventh Circuit's opinion in *Latham v. United States*, 527 F.3d 651 (7th Cir. 2008); *see also United States v. Smith*, 03-20036-JWL, 2009 WL 2448803, at *1 (D. Kan. Aug. 10, 2009) (citing *Latham*).  In *Latham*, the court held that a defendant's federal conviction did not become final under the AEDPA until the time for seeking Supreme Court certiorari expired, despite the voluntary dismissal of the defendant's appeal.  *Id.* at 652–53.  The Seventh Circuit reasoned that, under 28 U.S.C. § 1254, even where a defendant voluntarily dismisses his appeal, he is still "entitled to ask the Supreme Court to review [that] judgment by writ of certiorari[.]"  *Id.* at 653; *see also United States v. Parker*, 416 F. App'x 132, 132 (3d Cir. 2011) (citing *Latham* and agreeing with government's concession that "there is no known precedent for the proposition that a criminal defendant who seeks voluntary dismissal of an appeal is foreclosed from filing a petition for certiorari challenging the dismissal.").

In this case, the Tenth Circuit issued its mandate on February 5, 2013, dismissing the appeal on defendant's own motion.  However, the one-year clock did not start ticking at the issuance of the mandate; rather, the one-year clock began ticking when the time expired for defendant to file a petition

for certiorari, or May 6, 2013.  *See Latham*, 527 F.3d at 653.  Defendant filed the instant motion on February 18, 2014, which falls within the one-year deadline for filing.  Defendant's § 2255 motion is timely filed.

### II.     Waiver of Collateral Attack

While defendant presents his argument in terms of ineffective assistance of counsel, it appears that defendant is actually complaining about the sentence he received.  Specifically, defendant contends that the underlying felony upon which the court relied in enhancing his sentence did not qualify as a predicate offense.  The court believes defendant has waived this claim pursuant to the terms of his plea agreement.

In this case, defendant signed a plea agreement that contains a waiver of appeal and collateral attack of his sentence. (Doc. 12 at 7–8.)  In general, a court will hold a defendant to the terms of a lawful plea agreement.  *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998).  A knowing and voluntary waiver of 28 U.S.C. § 2255 rights is enforceable.  *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001).  The court applies a three-pronged analysis to evaluate the enforceability of such a waiver, in which the court must determine: (1) whether the scope of the waiver covers the disputed issue; (2) whether the defendant knowingly and voluntarily waived his rights; and (3) whether enforcement of the waiver would result in a miscarriage of justice.  *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).

#### A.  Scope of Waiver

In determining whether a disputed issue is within the scope of the waiver, courts look to the plain language of the plea agreement.  *United States v. Anderson*, 374 F.3d 955, 957–58 (10th Cir.

2004). The court strictly construes the waiver and resolves any ambiguities against the government. *Hahn*, 359 F.3d at 1343. Defendant's plea agreement at paragraph 12 states:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein (including the length and conditions of supervised release). The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c) and a motion brought under Fed. Rule of Civ. Pro 60(b) [sic]. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.

(Doc. 12 at 7–8.) In addition, defendant confirmed at the plea hearing that he understood he was waiving any right to appeal or collaterally attack his sentence. (Doc. 24 at 18–19.)

The court construes the plea agreement "according to contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted). As set forth in the plea agreement, defendant waived his right to appeal any sentence within the guideline range or to otherwise challenge his sentence in any collateral proceeding, including a motion brought under 28 U.S.C. § 2255. Defendant cannot overcome a reading of the plain language of the plea agreement, even using a narrow construction of the scope of the waiver. *See Hahn*, 359 F.3d at 1325. Defendant's claim asserted in his § 2255 motion falls within the scope of the waiver.

### B. Knowing and Voluntary

-4-

In determining whether a defendant's waiver was knowing and voluntary, courts look to the specific language of the plea agreement and the court's Rule 11 plea colloquy with the defendant. *See id.* Defendant's plea agreement expressly states that defendant had sufficient time to discuss the agreement with counsel, he freely and voluntarily entered into the agreement, and the agreement was not the result of any threats, duress, or coercion. (Doc. 12 at 9.)

During defendant's Rule 11 colloquy, the court asked defendant a series of questions regarding his understanding of the consequences of the plea, to which defendant responded that his entry of the plea was voluntary and that he understood the consequences. (Doc. 24 at 4–26.) Because defendant is "bound by his solemn declarations in open court," *Lasiter v. Thomas*, 89 F.3d 699, 703–04 (10th Cir. 1996) (internal quotation marks omitted), the court finds that defendant knowingly and voluntarily entered his plea, and nothing in the record suggests otherwise.

### C.  Miscarriage of Justice

Enforcing a waiver of rights results in a miscarriage of justice if: (1) the court considered an impermissible factor such as race; (2) the defendant received ineffective assistance of counsel in connection with the negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the sentence is otherwise unlawful, and is the result of error that seriously threatens the fairness, integrity, or public reputation of judicial proceedings. *Hahn*, 359 F.3d at 1327. Defendant bears the burden of demonstrating that a waiver results in a miscarriage of justice. *Anderson*, 374 F.3d at 959 (citation omitted).

Here, the court did not consider any impermissible factors in determining defendant's sentence, the sentence is within the statutory range, and even if the court imposed an unlawful sentence, such was not the result of error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Of note, defendant's sentence was at the low end of the guideline range. Moreover, with

respect to negotiating the waiver, defendant makes no allegation that he was denied effective assistance related to the waiver itself.  Accordingly, the court finds no reason why enforcement of the waiver would result in a miscarriage of justice.  The court holds that defendant waived any right to collaterally attack his sentence, rendering dismissal of this § 2255 motion appropriate.

### III.     Ineffective Assistance of Counsel

Even though the court has determined that defendant has waived any right to collaterally attack his sentence, the court will nonetheless examine whether defendant's attorney provided ineffective assistance of counsel.  (Doc. 29 at 4.)  At sentencing, the court applied a sixteen-level enhancement based upon defendant's prior conviction of a crime of violence.  Defendant claims that his prior aggravated felony conviction should not have been used to enhance his sentence because, he argues, it was not a crime of violence.

#### 1.  Legal Standards

The court applies the standard identified in *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether a habeas petitioner's counsel provided ineffective assistance.  *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*).  Under *Strickland*, a petitioner bears the burden of satisfying a two-pronged test in order to prevail.  First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.  The court affords considerable deference to an attorney's strategic decisions and "recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Second, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* But, despite the existence of two prongs, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

### 2. Analysis

Defendant was charged in this case with unlawfully re-entering the United States following deportation after an aggravated felony. The background facts underlying defendant's charge are as follows: In 2000, defendant (a citizen of Mexico) had his prior lawful permanent resident status revoked following a conviction for Aggravated Battery against his wife in Wyandotte County, Kansas District Court, Case No. 00-CR-891 (the "2000 Aggravated Battery Conviction"). Defendant was ordered removed from the United States and deported on August 5, 2000.

On September 16, 2003, defendant was arrested by the Lenexa, Kansas Police Department for obstruction and traffic violations and was found to have unlawfully entered the United States. As a result of this arrest, defendant pleaded guilty to illegal re-entry after deportation without obtaining advance consent after having been convicted of an aggravated felony, in the District of Kansas, Case No. 03-CR-20152-1. Defendant was sentenced to seventy-seven months' imprisonment. After serving the sentence imposed, defendant was again deported from the United States on June 15, 2009.

On May 17, 2012, defendant was arrested by the Kansas City, Kansas Police Department for promoting prostitution. Subsequent to his arrest, it was determined that defendant was unlawfully present in the United States, and he was released to Immigration and Customs Enforcement (ICE) officials. ICE officials discovered defendant's 2000 Aggravated Battery Conviction. Defendant was subsequently indicted in this case for illegal re-entry following a conviction of an aggravated felony.

At sentencing, the court applied a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii), which is applicable if a defendant illegally re-entered the United States after a conviction for a "crime of violence." The crime of violence supporting the enhancement was defendant's 2000 Aggravated Battery Conviction, for which defendant was deported (the first time).

Defendant argues that he should not have received the sixteen-level enhancement because, he claims, the 2000 Aggravated Battery Conviction was not a crime of violence. "Crime of violence" as defined under the applicable guideline section includes "aggravated assault" and "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt.1(B)(iii).

In his reply brief,[2] defendant appears to argue that he merely pushed his wife, without any physical violence occurring. (Doc. 60 at 3 (Case No. 03-20152-01).) Defendant claims that he could have been found guilty of aggravated battery without having committed a crime of violence and that, as a result, the enhancement for his prior conviction was in error. The court disagrees.

As set forth in the PSR, the complaint filed in Wyandotte County charged that the defendant unlawfully and intentionally caused physical contact to Mary Teresa Hernandez in a rude, insolent, or angry manner whereby great bodily harm, disfigurement, or death could be inflicted. (Doc. 13 ¶ 32.) The PSR also referenced the underlying police report, which stated that police responded to a domestic disturbance and found that the defendant had struck his wife in the face with his fists and knees and also struck her with his boots. (*Id.*) Although defendant raised objections to other portions of the PSR, defendant did not object to this paragraph or to the court's application of the enhancement. However,

---

[2] The court believes defendant mistakenly filed a reply brief in his previous Kansas District Court case, Case No. 03-20152-01. (Doc. 60 "Reply to United States' Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.) For purposes of resolving defendant's motion in this case, the court has considered the arguments raised by defendant in his (erroneously-filed) reply brief.

-8-

even if defendant had raised an objection that his conduct did not constitute a crime of violence, the court finds the sixteen-level enhancement was nonetheless appropriate.

In *United States v. Treto-Martinez*, 421 F.3d 1156 (10th Cir. 2005), the Tenth Circuit considered whether a defendant's plea of guilty to aggravated battery under Kansas law was sufficient to sufficient to sustain a finding that the defendant had a prior conviction for a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The court found that, as to "'physical contact . . . whereby great bodily harm, disfigurement or death can be inflicted,'—it is clear that a violation of this provision is [] sufficient to satisfy § 2L1.2(b)(1)(A)'s meaning for 'physical force. . . .' Thus, violation of Kan. Stat. Ann. § 21–3414(a)(1)(C) is entirely sufficient to constitute a 'crime of violence' for purpose of a sixteen-level enhancement under § 2L1.2(b)(1)(A)." *Treto-Martinez*, 421 F.3d at 1160.

In this case, defendant was convicted of unlawfully and intentionally causing physical contact to his wife "in a rude, insolent, or angry manner whereby great bodily harm, disfigurement, or death could be inflicted." (Doc. 13 ¶ 32.) The court believes this is sufficient to constitute a crime of violence, especially when considered along with the police report, which indicated that defendant had struck his wife in the face with his fists and knees and struck her with his boots. (*Id.*) The court finds this conduct falls within the scope of the "use . . . of physical force against the person of another," rendering defendant's aggravated battery conviction a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The court appropriately applied the sentencing enhancement.

**IV.     Certificate of Appealability**

The court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a defendant must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to

-9-

proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). The court is not convinced that its conclusions are debatable among reasonable jurists or that the issues presented merit further proceedings. For the reasons stated above, the court finds that defendant has not made a substantial showing of the denial of a constitutional right. The court declines to issue a certificate of appealability in accordance with Rule 11 as amended December 1, 2009.

**IT IS THEREFORE ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 29) is denied.

Dated this 16th day of October, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**